## NATHAN S. SWETT et al. versus PERLEY ORDWAY and Trustees.

Where a shopkeeper was authorized, in writing, by a manufacturing company, to advance goods and money to the workmen, to the extent of their earnings, and to deduct his advances from the checks to be drawn upon him by the company for the amount of such earnings, it was *held*, that this was a guaranty by the company to the shopkeeper, of payment for such advances, to the extent of the earnings of the workmen ; and that the company, being summoned as trustees of one of the workmen, might deduct such advances from the amount due to him for wages, provided he knew of this arrangement between the company and the shopkeeper, and had assented to it ; and that such workman having always received payment in that way, his knowledge of the arrangement and assent thereto, would be presumed.

By the answers of James Horton, the agent of the Salisbury Manufacturing Company, the alleged trustees, it appeared, that on the 1st of October, 1836, he addressed a letter, in the following words, to James Babson, who was the tenant of a store belonging to the company :

" You are hereby requested and authorized, for and on account of the Salisbury Manufacturing Company, hereafter and until otherwise notified, as application may be made to you by any person in the service of said company, [to advance] any amount in goods or money of your own, or of the company's, that you may have in your hands, not exceeding the amount that may be due such person on settlement. This instruction is not to make any change in the mode of keeping our books. Checks will be drawn on you as is usual, for the amount due each individual. You will keep your accounts with such of them as avail themselves of this arrangement individually, and when the check is presented, you will deduct all such advances therefrom, or the company will be discharged from all liability to you."

It further appeared, that Babson, in pursuance of such order, did from time to time furnish the operatives in the employment of the company, with goods and money of his own and sometimes with money advanced to him by the company for the purpose ; that at the end of every quarter the amount of what was due to each operative was made up by the officers of the company, and a check drawn on Babson in favor of each for the amount so due ; that Babson then paid the balance due, if any, after deducting his advances ; that as the respondent believed, Babson furnished the goods and money wholly on the credit of the company ; that at the time of the service of the writ, the principal defendant, who was in the employment of the company, had earned the sum of $ 54·63, for his wages, and Babson had advanced to him in money and goods, the sum of $ 72·38 ; that the respondent believed, that the defendant knew of the arrangement between Babson and the company ; and that the wages of the defendant had always been settled in this manner.

*Cross*, for the plaintiffs, cited *Hooper* v. *Hills & Tr.* 9 Pick. 435 ; *Stevens* v. *Reeves*, 9 Pick. 198 ; *Willard* v. *Butler & Tr.* 14 Pick. 540.

*Marston*, for the trustees, cited *Hathaway* v. *Russell*, 16 Mass. R. 477.

SHAW C. J. drew up the opinion of the Court. The question in this case is, whether the manufacturing company sum-

moned as trustees, can deduct, from the amount due to the principal defendant for his labor in their employment, the amount of goods taken up by the laborer at the store of Babson. To do this it is not necessary to show, that Babson was the agent of the company, or that the company were interested in the store. It is sufficient to show, that with the consent of the laborer, the company had undertaken to guaranty to Babson such advances as he should make to the laborer, to the amount of his earnings. In such case, the company would have a right to pay the amount which they had thus guarantied, and charge it to the laborer, and deduct it from his earnings ; and this would be a good defence in any action which might be brought by the laborer himself. Of course it is a good answer to a claim made on the company as the debtors and trustees of the laborer.

It was held in a recent case in Worcester, that a manufacturer, who had guarantied the debt of one who had boarded his workmen, by a parol undertaking, which he might have avoided by the statute of frauds, as being for the debt of another and not in writing, might nevertheless pay the debt conformably to his parol promise, and deduct the amount from the debt due from him to the principal defendant for board, and that he was not obliged, in favor of an attaching creditor, to violate his parol promise of guaranty, to the person who credited another for goods upon the strength of it. *Cahill* v. *Bigelow & Tr.* 18 Pick. 369.

It seems to us, then, that the only question is, whether the debtor, Ordway, knew of the arrangement, between the company and Babson, and assented to it. If he did, it seems equivalent to an order given by Ordway to his employer, in favor of Babson, to pay Babson's advances, out of his wages, and an agreement by the employers to do so. This arrangement was for the benefit of Ordway, by enabling him to get credit when he otherwise might not, or by getting it on better terms, under such a guaranty, than he could otherwise. He was not obliged to take up goods upon that credit ; but such a guaranty having in fact been given, if he took up goods with the knowledge of its existence, the necessary legal inference is, that he took them under that guaranty. Such a guaranty being

for the benefit of the debtor, slight evidence is sufficient to warrant the presumption of his assent to it.

And in the present case the Court are of opinion, that the circumstances are sufficient to warrant the presumption, that the workman knew of this guaranty, and assented to it ; and if it were a question for a jury, they ought to draw that inference from the circumstances disclosed ; and, appearing in the trustees' answer, the Court ought to draw the same conclusion.

The store was connected with the factory, and owned by tne company, and Babson was their tenant ; they had for many years been in the habit of paying their workmen by checks or orders, on Babson, and this was known to Ordway, who had uniformly received payment in the same way. And the agent for the company, who settled with the workmen, and drew the checks, testifies to his belief that it was known to Ordway.

The Court are therefore of opinion, that the paper set forth in the answer was a valid guaranty to Babson, of such sums, ·n goods or money, as he should advance for their workmen, to the extent of their earnings; that Ordway knew it, and availed himself of it, by applying to Babson for such advances, and therefore that the company have a right to deduct the amcunt for which they were so responsible to Babson, at the time of the service of the trustee process ; and as this sum exceeded the earnings of Ordway, the trustees had no effects and are entitled to be discharged on their answer. Whether, if the earnings had exceeded Babson's advances, at the tɪme of the service of the trustee process; the company would have been bound to give notice to Babson to make no further advances under that guaranty, and whether they would have been held under the attachment, for such balance, we give no opinion. It might depend upon a more exact statement of the agreement or custom as to the mode of payment. *Willard* v. *Butler & Tr.* 14 Pick. 550.

*Trustees discharged.*